**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosa Acosta, et al., | No. CV-24-03681-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Clear Blue Specialty Insurance Company, | |
| Defendant. | |

On October 13, 2025, Defendant Clear Blue Specialty Insurance Company ("Defendant") filed a Motion for Judgment on the Pleadings (Doc. 20). Plaintiffs Rosa Acosta, Brenda Geiger, Andra Cheri Moreland, and Jessica Rockwell (collectively, "Plaintiffs") filed their Response in Opposition (Doc. 23) and Defendant thereafter filed a Reply (Doc. 24).

## I.    Background

This case arises from an insurance coverage dispute, in which Plaintiffs, several professional models, seek to recover from Defendant for claims resolved by consent judgment in their underlying lawsuit, Case No. 2:21-cv-1007-SPL (the "Underlying Lawsuit").[1]

---

[1] In deciding on a motion for judgment on the pleadings, the Court is limited to the pleadings and may not consider extrinsic evidence. However, the Court may consider a document, "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) *as amended* (July 28, 1998). Additionally, "[i]f the complaint references a lawsuit that is the subject of an insurance coverage dispute, for example, the court can consider the pleadings in the underlying action." *Shame on You Productions, Inc. v. Elizabeth Banks*, 120 F. Supp.

### 1.  The Underlying Lawsuit

Plaintiffs "are well-known professional models who earn their livelihood modeling and selling their identity, image and likeness…to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services." (Doc. 20-1 at ¶ 14).  Indeed, Plaintiffs assert that they are "internationally known for gracing the covers of countless mainstream publications" as well as film and television productions. (*Id.* at ¶ 14).  Precision Housing Distributor LLC ("Precision Housing"), doing business as T & A Cabaret, is a Phoenix-based strip club, which Plaintiffs claim misappropriated their images and likeness.  (*Id.* at ¶¶ 13, 15).  In various social media posts, Precision Housing used Plaintiffs' images to advertise club events, such as "Champagne Saturdays," "Latin Ladies Night," "Working Man Specials," and "2 por 1 Martes."  (*Id.* at ¶¶ 17, 20, 22, 24). Plaintiffs allege that Precision Housing did so to profit from the value of Plaintiffs' images or create the impression Plaintiffs somehow endorsed the club, when in fact no Plaintiff was in any way affiliated with the business.  (*See id.* at ¶¶ 16–17, 31–32).

Due to these advertisements, their defamatory nature, and the harm to Plaintiffs' professional reputations, Plaintiffs filed suit against Precision Housing, bringing false endorsement and false advertising claims under the Lanham Act in addition to invasion of privacy and negligence claims.  (*Id.* at ¶ 56–104).  Following significant litigation, judgment was entered in favor of Plaintiffs in the amount of $570,000.00, and Precision Housing assigned all claims against Defendant to Plaintiffs.  (Doc. 1 at ¶¶ 6–7).

### 2.  The Present Case

Plaintiffs bring the present action against Defendant "for breach of an insurance contract, for declaratory relief, and to collect on judgment entered in favor of Plaintiffs and against Precision Housing[.]"  (*Id.* at ¶ 1).  At all times relevant to the Underlying Lawsuit, Defendant insured Precision Housing.  (*Id.* at ¶ 3).  Therefore, upon receipt of the Underlying Lawsuit, Precision Housing sought defense and indemnification from

---

3d 1123, 1144 (C.D. Cal. 2015).  Thus, the court will consider both the complaint in the underlying action and the at-issue insurance policy.

Defendant. (*Id.* at ¶¶ 3–4). Defendant denied Precision Housing's requests. (*Id.* at ¶ 5). Plaintiffs claim that their injury constituted a "personal and advertising injury" under Precision Housing's Clear Blue Policy (the "Policy"), and consequently, Defendant was obligated to defend and indemnify Precision Housing in the Underlying Lawsuit and breached their contract by failing to do so. (*Id.* at ¶¶ 45, 49–50).

### 3. The Policy Terms

Precision Housing's Policy with Defendant was valid from November 14, 2017, to November 14, 2018. (*Id.* at ¶ 21). The Policy covered commercial general liability including all "personal and advertising injury." (*Id.* at ¶¶ 20, 24). Under the Commercial General Liability Form Section I, Coverage B, Defendant is obligated, "to pay damages because of 'personal and advertising injury' to which the insurance applies," and "have the right and duty to defend the insured against any 'suit' seeking those damages." (Doc. 20-2 at 45). The Policy defines "personal and advertising injury" as, injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention, or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your 'advertisement'; or
g. Infringing upon another's copyright, trade dress, or slogan in your 'advertisement.'

(*Id.* at 54).

However, the Policy also excludes coverage of "personal and advertising injury" that arises out of "exhibitions and related marketing." (the "ERM Exclusion"). (*Id.* at 30). "Exhibitions and related marketing" is defined as:

(a) The creation, production, publication, performance, exhibition,

- 3 -

> distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works, and similar productions or work, in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and web sites.
>
> (b) The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.
>
> (c) Merchandising, advertising or publicity programs or material for the operations and material described in (a) or (b) above.

(*Id.*)

## II.    Legal Standard

In a civil action, "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congressional Church*, 887 F.2d 228, 230 (9th Cir. 1989). As both motions challenge the legal sufficiency of the opposing party's pleadings, a Rule 12(c) motion utilizes the same standard as a Rule 12(b)(6) motion. *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "All allegations of fact by the party opposing the motion must be accepted as true, and are construed in the light most favorable to that party." *Seventh-Day Adventist Congressional Church*, 887 F.2d at 230. Judgment on the pleadings is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Deveraturda v. Globe Aviation Sec. Services*, 454 F.3d 1043, 1046 (9th Cir. 2006) (internal quotation marks and citation omitted).

## III.    Discussion

The parties do not dispute that the conduct in the Underlying Lawsuit violated Plaintiffs' privacy rights such that it constitutes a "personal and advertising injury," which is covered under the Policy. (Doc. 20 at 10). Instead, they dispute whether the Policy's ERM Exclusion bars coverage for the Underlying Lawsuit and whether the ERM Exclusion

- 4 -

renders coverage illusory. (*See generally* Docs. 20, 23). The Court will consider these issues in turn.

### A. Applicability of the ERM Exclusion

Defendant contends that the ERM Exclusion unambiguously bars coverage for the Underlying Lawsuit because the term "exhibitions and related marketing" is unambiguously defined in the Policy. (Doc. 20 at 11). Defendant argues that the conduct at issue in the Underlying Lawsuit—i.e., the use of Plaintiffs' images in social media posts advertising club events—falls under the ERM Exclusion because Precision Housing was charged with 1) using publicity programs or material prepared for promotional events, and 2) publishing a celebrity image or likeness. (*Id.* at 2). Plaintiffs disagree and claim that none of the exclusions in the Policy eliminate Defendant's obligation to provide a defense and coverage for Precision Housing. (Doc. 1 at ¶ 29). They argue that the advertisements were not "publicity programs" for "promotional events" such that the acts were excluded under the Policy. (*Id.* at 16). They argue that a "promotional event" is not "a party at a nightclub but rather an 'event' thrown in furtherance of *promoting* something…," and Defendant has failed to show that the advertisements were for "promotional events." (*Id.* at 17). Furthermore, Plaintiffs claim that they are not "celebrities" but simply "professional models" who have a reputation to protect within the modeling industry. (Doc. 23 at 9).

Under Arizona law, interpretation of an insurance contract is a matter of law. *See, e.g*, *Young v. Owners Ins. Co.*, 671 F. Supp. 3d 1000, 1006 (D. Ariz. 2023). When interpreting a contract, the court must begin with the language of the policy interpreted in the context of the entire contract. *Farwest Pump Co v. Secura Ins.*, 637 F. Supp. 3d 733, 739 (D. Ariz. 2022). "When policy language is unambiguous, a court may not create ambiguity to find coverage." *Ratchford v. Watford Specialty Ins. Co.*, 659 F. Supp. 3d 1032, 1038 (D. Ariz. 2023). The language must be applied as written – in an ordinary sense and in context. *Id.* A clause is ambiguous if there are multiple conflicting reasonable interpretations. *Teufel v. Am. Fam. Mut. Ins. Co.*, 419 P.3d 546, 548 (Ariz. 2018). If a clause is ambiguous, courts must interpret it by looking to legislative goals, social policy,

and the entire transaction. *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 187 P.3d 1107, 1110 (Ariz. 2008). If ambiguity remains, the court must interpret the clause against the insurer. *Id.*

The duty to defend and indemnify arises if the complaint of the underlying lawsuit alleges facts that fall under policy coverage. *Teufel*, 419 P.3d at 548. "[I]f any claim alleged in the complaint is within the policy's coverage, the insurer has a duty to defend the entire suit…" *Nat'l Fire Ins. Co. of Hartford v. James River Ins.*, 162 F. Supp. 3d 898, 913 (D. Ariz. 2016). There is no duty to defend where the claims fall within an exclusion of the policy. *See U.S. Liab. Ins. Co. v. Xiangnan Gong*, 413 F. Supp. 3d 987, 993 (D. Ariz. 2019). An insurer may also "contest any duty to indemnify by asserting that its policy did not cover the accident or claim." *757BD LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 330 F. Supp. 3d 1143, 1149 (D. Ariz. 2018). Generally, a determination that an insurer has no duty to defend also forecloses any duty to indemnify since the duty to defend is broader in scope than the duty to indemnify. *See Allstate Vehicle & Prop. Ins. Co. v. Miranda*, 2026 WL 962188, *3 (D. Ariz. Apr. 9, 2026); *Travelers Cas. & Sur. Co. of Am. v. Levin*, 2022 WL 2315558, *6 (Ariz. Ct. App. 2022) (noting that the duty to defend is broader in scope than the duty to indemnify).

In short, if Precision Housing's use of Plaintiffs' images falls within the Policy's ERM Exclusion, Defendant has neither a duty to defend nor a duty to indemnify.

### 1. Promotional events

Defendant argues that the contested images constitute advertisements for "promotional events" as the events advertised "were not ordinary nightclub evenings." (Doc. 20 at 12). According to Defendant, these events promoted Precision Housing through "drink specials, free admission for women, reduced dance pricing, and other deals." (*Id.* at 12–13). Plaintiffs disagree, claiming that the events Precision Housing advertised were simply parties or events at Precision Housing's strip club, not in furtherance of promoting something. (Doc. 23 at 17).

The Policy does not define "promotional event," and neither the Ninth Circuit nor

the Arizona state courts have considered the definition of the term. Since courts cannot manufacture ambiguity just to apply an exception, the Court will analyze the terms of the policy as written and from the "viewpoint of one untrained in law or in the insurance business." *Young*, 671 F. Supp. 3d at 1007. The interpretation that an ordinary person would give to the entire phrase controls, not the interpretation of the individual words. *Prudential Ins. Co. of America v. Barnes*, 285 F.2d 299, 301 (9th Cir. 1960). Furthermore, "[t]he insured party bears the burden of establishing coverage, while the insurer bears the burden of establishing that a policy exclusion is applicable." *Nat. Fire & Marine Ins. Co. v. Infini PLC*, 2017 WL 4792118, *2 (D. Ariz. Oct. 24, 2017).

Notably, two out-of-circuit courts have recently weighed in on the exact issues presented here. First, the court in *Sampedro v. Clear Blue Specialty Insurance Company*, 2026 WL 1291919, *1 (M.D. Fla. May 12, 2026), considered the applicability of the same ERM Exclusion to a nightclub's advertisements featuring the plaintiffs' images. *Id.* at *1–2. The Florida district court held that the ERM Exclusion unambiguously excused the insurer from defending the nightclub because the plaintiffs' likenesses were used in the "advertising of an exhibition of promotional events," such as "the 'Pretty Chicks & Kicks' and 'Tastee Tuesday' events." *Id.* at *3. Although the plaintiffs argued that the advertisements did not concern "promotional events" because the "most reasonable" definition is "an event thrown in furtherance of promoting something," the court reasoned that, even under such a definition, "[the nightclub's] promotional events promoted the nightclub itself through alcohol sales and DJ appearances." *Id.* (internal quotation marks omitted).

A Connecticut district court also recently considered the application of the ERM Exclusion to advertisements featuring the plaintiffs' images under near identical circumstances in *Nobriga v. Clear Blue Specialty Insurance Company*, 2026 WL 1998727 (D. Conn. July 10, 2026). There, utilizing dictionary definitions, the court determined that a "promotional event" is understood as "a noteworthy happening or social occasion or activity serving the means of furthering the growth or development of something,

- 7 -

particularly the acceptance and sale of merchandise through advertising, publicity, or discounting." (*Id.* at \*6) (citing *Promotion*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/promotion (last visited July 16, 2026)) (citing *Event*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/event (last visited July 16, 2026)). Based on this definition, the court found that the advertisements for the café's "Cinco de Mayo Party," "Halloween and St. Patrick's Day parties," and "Baseball Night" constituted advertisements for "promotional events." (*Id.* at \*7). In so ruling, the court explained that "each advertisement offered discounts on food and entertainment with the goal of bringing additional customers through [the café's] doors, and tied such discounts to specific holidays or themed nights such as baseball night" making them "advertising" for "promotional events." (*Id.*)

Of course, neither of the foregoing decisions are binding on the Court. Nonetheless, the Court agrees with *Sampedro* and *Nobriga* that a "promotional event" need not be in furtherance of something other than a business itself. Even more so, the ordinary meaning of "promotional event" provided in *Nobriga* is largely an accurate definition of the term. However, the Court disagrees that the common understanding of "promotional event" is broad enough to encompass every promotion put in place by a business. In *Nobriga*, the court agreed with the defendant that the advertisements "were not 'ordinary strip club evenings,' but rather were 'tied to a holiday or to a recurring weekly promotion,' making them promotional events." *Id.* at \*7. It is easy to see how the holiday parties for Cinco de Mayo, St. Patrick's Day, and Halloween in *Nobriga* qualify as "promotional events," as they were occasions or specific occurrences. Under the Court's view, the same cannot be said for advertisements "tied to…a recurring weekly promotion[,]" such as "Baseball Night." (*Id.*) This advertisement and others like it are just as they are described— advertisements for a recurring weekly promotion. With this distinction in mind, the Court turns to the present circumstances.

The images here advertise "Champagne Saturdays," "Latin Ladies Night,"

"Working Man Specials," and "2 por 1 Martes." (Doc. 20-1 at 22–23, 25–26, 28–29, 31–32). Some of these events Precision Housing advertised on social media seemingly occurred on the same day each week. For example, "Latin Ladies Night" provides discounted drinks and dances and takes place "every Sunday." (*Id* at 25–26). The advertisement for "2 por 1 Martes" touts two for one drinks and dances, and the social media caption states that this event occurs "[e]ach and every Tuesday." (*Id.* at 31–32). "Champagne Saturdays" also implies that customers can receive twenty-dollar champagne bottles and shot specials on most, if not all, Saturdays. (*Id.* at 22–23). Meanwhile, "Working Man Specials" advertised no cover charge as well as five-dollar specials "every hour" running "7 days a week" from 11:00 A.M. to 7:00 P.M." (*Id.* at 28–29). While Defendant claims that these were not typical nightclub evenings, the advertisements elucidate that the specials offered were a routine part of Precision Housing's business. (Doc. 20 at 12); *see also Sampedro*, 2026 WL 1291919 at *3 (where the court noted that "the ERM Exclusion might not have applied to an advertisement that described the nightclub's standard activities.").

Unlike the holiday parties in *Nobriga*, the specials advertised here are not a "noteworthy happening" or "social occasion," and are untethered to anything but the promotions themselves. Moreover, the holiday events provided special food to celebrate such as a "free taco bar" for Cinco de Mayo and "corned beef sandwiches for St. Patrick's Day." *Nobriga*, 2026 WL 1998727 at *6. By contrast, Precision Housing simply provided daily deals on products or services they presumably offered every night. Even if these specials promote Precision Housing's club, merely offering drink and dance specials does not definitively transform a promotion into a promotional *event*. Nor does giving a title to the promotion, such as "2 por 1 Martes," automatically make a promotion or sale a "promotional event." *See, e.g.*, *Teufel v. Am. Fam. Mut. Ins. Co.*, 2017 WL 1882330, *3 (Ariz. Ct. App. May 9, 2017), *aff'd in part*, 419 P.3d 546 (Ariz. 2018) ("The mere fact that the parties had a contract between them is not enough to trigger the 'contractual liability' exclusion."). The lack of ties to a special occasion or specific occurrence renders the ERM

- 9 -

Exclusion of "promotional events" inapplicable. *Roberts v. State Farm Fire & Cas. Co.*, 705 P.2d 1335, 1337 (Ariz. 1985) ("[I]f an insurer wishes to limit its liability, it must employ language in the policy which clearly and distinctly communicates to the insured the nature of the limitation."). To rule otherwise would require reading the word "event" out of the phrase "promotional event." *Barnes*, 285 F.2d at 301 ("What controls is not the interpretation of individual words which are not defined in the policy itself, but the interpretation which the ordinary man would give to the phrase as a whole taken in the context of the whole policy[.]"). Contrary to Defendant's argument, Plaintiffs' likenesses were used to advertise ordinary nightclub evenings. Ultimately, on the current record, Defendant has not met its burden to establish, as a matter of law, that Precision Housing's use of Plaintiffs' images is excludable conduct on the grounds that Plaintiffs' images were advertisements or materials for the exhibition of "promotional events."

### 2.  Celebrity status

Defendant also contends that the ERM Exclusion applies because the Underlying Lawsuit arose out of the publication of a celebrity image or likeness. (Doc. 20 at 11). They argue that Plaintiffs do not "present themselves as private individuals" but instead as "internationally recognized models and entertainers." (*Id.*) On the other hand, Plaintiffs claim that the term "celebrity" is ambiguous, and that being "well-known" within the modeling industry does not equate to being a "celebrity." (Doc. 23 at 8).

Like the issue of "promotional events," the term "celebrity" is not defined under the Policy. Nonetheless, the Court finds that the common understanding of "celebrity" is as described in *Nobriga*: "a famous or celebrated person." *Nobriga*, 2026 WL 1998727 at *5 (citing *Celebrity*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/celebrity.). While Plaintiffs are recognizable professional models with large social media followings and television and movie appearances (Doc. 20-1 at ¶¶ 17–24), the Court further concurs with the *Nobriga* court's reasoning that "it is not clear that 'well-known' is functionally equivalent to being a 'celebrity' or 'famous.'" *Nobriga*, 2026 WL 1998727 at *5. Because Defendant does not define what amount of recognition

makes a person a "celebrity" for the purposes of the Exclusion, the term "celebrity" is ambiguous. In consequence, the Court is unable to find, on a motion for judgment on the pleadings, that the ERM Exclusion applies to the Underlying Lawsuit on the basis of Plaintiffs' "celebrity" status.

### B. Illusory Coverage

Plaintiffs argue that, if the ERM Exclusion applies here, the Exclusion effectively renders the Policy's coverage for advertising illusory. (Doc. 23 at 17). They claim that because the Policy makes advertising synonymous with publicity for promotional events, the Policy covers no "personal and advertising injuries." (*Id.* at 18). Defendant, however, argues that the ERM Exclusion does not render coverage under the Policy illusory because it still provides coverage for other forms of "personal and advertising injury." (Doc. 20 at 13–14).

Plaintiffs' point that a broad definition for the ERM Exclusion of "promotional events," as suggested by Defendant, would render the Policy illusory is well taken. However, because the ERM Exception does not apply to the particular advertisements here, the Court need not decide that issue. Defendant has not met its burden to establish that the ERM Exclusion applied to these advertisements. Thus, Defendant is not entitled to judgment as a matter of law, and a judgment on the pleadings in favor of Defendant is not proper.

Accordingly,

**IT IS ORDERED** that Defendant Clear Blue Specialty Insurance Company's Motion for Judgment on the Pleadings (Doc. 20) is **DENIED**.

**IT IS FURTHER ORDERED** that the stay in this matter (Doc. 28) is **LIFTED**. Within 14 days of this Order, the parties shall meet and confer and submit a revised joint case management plan for the Court's review.

Dated this 21st day of July, 2026.

Honorable Diane J. Humetewa
United States District Judge